**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2962-24

JUSTIN SIGNER,

    Plaintiff-Appellant,

v.

NATIONWIDE INSURANCE
COMPANY and HARLEYSVILLE
INSURANCE COMPANY,

    Defendants-Respondents,

and

AMERICAN GUARANTEE &
LIABILITY INSURANCE/ZURICH
AMERICAN INSURANCE
COMPANY,

    Defendant.

_____

Submitted May 28, 2026 – Decided July 16, 2026

Before Judges Mayer and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-0449-24.

Brandon J. Broderick, LLC, attorneys for appellant (Andrew N. Nirchio and Paul F. Romano, on the briefs).

Riker Danzig LLP, attorneys for respondent Harleysville Insurance Company (Peter M. Perkowski, Jr., of counsel and on the brief; Brooke G. Suárez, on the brief).

PER CURIAM

Plaintiff Justin Signer appeals from a March 4, 2025 order granting summary judgment in favor of defendant Harleysville Insurance Company (Harleysville).[1] He also appeals from an April 25, 2025 order denying his motion for reconsideration. We vacate the order granting summary judgment to Harleysville because the record lacks sufficient evidence to determine whether plaintiff's conduct in failing to provide Longworth[2] notice to Harleysville was intentional or negligent. Such a determination is necessary before deciding whether Harleysville is entitled to summary judgment. Because we vacate the order granting summary judgment and remand to the trial court, we deem the appeal from the order denying plaintiff's motion for reconsideration moot.

---

[1] Defendant Nationwide Insurance Company (Nationwide) owns Harleysville. Defendants have clarified Harleysville is the proper party as it issued the commercial vehicle insurance policy to plaintiff's employer.

[2] Longworth v. Van Houten, 223 N.J. Super. 174 (App. Div. 1988).

We recite the facts from the limited summary judgment record. Commencing in August 2022, Harleysville issued a commercial vehicle insurance policy to plaintiff's employer. Harleysville afforded underinsured motorist coverage (UIM) coverage to plaintiff's employer under that policy up to $100,000. Plaintiff's employer paid Harleysville a premium in the amount of $482.00 for UIM coverage. As of August 6, 2022, Harleysville's policy only listed one insured driver: Shlomo Bernstein.

On August 17, 2022, plaintiff's employer amended its commercial vehicle insurance policy with Harleysville. Among the changes to the insurance policy, plaintiff's employer increased the amount of UIM coverage to $1,000,000. Under the amended policy, plaintiff's employer paid a premium in the amount of $1,902.00 for the increased UIM coverage. The amended policy also provided insurance coverage for three employee drivers, including plaintiff.

Plaintiff sought UIM benefits as a result of injuries he sustained in a two-vehicle accident on September 8, 2022 while he was driving within the scope of his employment in a Harleysville-insured vehicle. The police determined the other driver (tortfeasor) was responsible for the accident. On the day of the accident, the tortfeasor had an automobile insurance policy providing $100,000

3

per person bodily injury liability coverage and $100,000 per person UIM coverage.

On October 14, 2022, plaintiff filed a workers' compensation claim petition (petition) against his employer for his work-related injuries. Plaintiff's workers' compensation claim was handled by his current counsel. In the petition, plaintiff's counsel identified the insurance carrier for plaintiff's employer as "Harleysville Preferred Insurance Co."

Plaintiff's employer answered the petition, conceding plaintiff's injuries occurred in the course of his employment and confirming it had commercial vehicle coverage from Harleysville on the date of the accident. On September 15, 2023, Harleysville paid medical and temporary disability benefits awarded to plaintiff in his workers' compensation case.

Three days later, plaintiff accepted $100,000 from the tortfeasor's automobile insurance carrier in exchange for his waiver of all claims. By entering into an agreement with the tortfeasor, plaintiff extinguished Harleysville's subrogation rights. Plaintiff admitted he failed to give notice of the tortfeasor's settlement offer to Harleysville as required under Longworth.

On November 28, 2023, plaintiff sent a letter to Harleysville advising he intended to file a UIM claim for injuries stemming from the 2022 accident.

A-2962-24

Harleysville responded, arguing plaintiff waived any UIM claim upon entering into a settlement agreement with the tortfeasor without providing notice to it. Harleysville stated plaintiff "did not afford [Harleysville] an opportunity to determine whether [it] would pay to [plaintiff] [the tortfeasor's] $100,000 insurance proceeds and prosecute a subrogation claim." According to Harleysville, plaintiff's "failure to provide notice to the insurance company [wa]s fatal to [his] right to make a claim for UIM benefits."

In support of its position, Harleysville relied on Ferrante v. New Jersey Manufacturers Insurance Group, 232 N.J. 460, 474 (2018). In Ferrante, the Court held:

> If . . . the insured, regardless of his state of mind, fails to give the UIM carrier any notice of the UIM claim until after the final resolution of the underlying tort action, thereby causing the irretrievable loss of the carrier's rights to subrogation and intervention before the carrier has ever learned of the existence of the claim, coverage is forfeited.
>
> [Ibid.]

On January 11, 2024, Harleysville sent plaintiff's counsel a copy of the commercial vehicle policy in effect on the date of the accident. The Harleysville policy included the $100,000 UIM coverage declaration pages and the declaration pages for the amended commercial vehicle policy reflecting the two

additional insured employee drivers and the increased UIM coverage amount of $1,000,000.  The UIM coverage provision in the amended policy stated:

> A person seeking coverage under this endorsement must also promptly notify [Harleysville], in writing, of a tentative settlement between the "insured" and the insurer of an "underinsured motor vehicle", and allow us to advance payment to that "insured" in an amount equal to the tentative settlement within [thirty] days after receipt of notification to preserve our rights against the insurer, owner or operator of such "underinsured motor vehicle."

On a date unclear from the record, plaintiff's counsel requested a search of the tortfeasor's assets.  On February 5, 2024, months after plaintiff entered the settlement with the tortfeasor, plaintiff received the results of that asset search indicating the tortfeasor had no recoverable assets.[3]

On February 9, 2024, in lieu of responding to Harleysville's letter, plaintiff filed a complaint against defendant American Guarantee & Liability Insurance/Zurich American Insurance Company (Zurich) and several fictitious parties.[4]  Plaintiff alleged defendants "refused to pay or satisfy [p]laintiff's claim

---

[3]  One year later, plaintiff's counsel requested another search for any assets held by the tortfeasor.  Again, the results revealed the tortfeasor had no recoverable assets.

[4] The record does not indicate why plaintiff named Zurich and not Harleysville as a defendant.

for [UIM] benefits to which he is entitled under the terms of the policy." Additionally, plaintiff claimed defendants "engaged in and continue[d] to engage in an unreasonable delay or unreasonable denial of the plaintiff's claim for payment of benefits" contrary to the New Jersey Insurance Fair Conduct Act, N.J.S.A. 17:29BB-1 to -3, the Unfair Claim and Settlement Practices Act, N.J.S.A. 17:29B-1 to -19, and the Unfair Claims Settlement Practices, N.J.A.C. 11:2-17.1 to -17.15.

On July 22, 2024, plaintiff amended his complaint to include Nationwide and Harleysville as defendants, asserting the same claims against these parties as alleged in the original complaint. Harleysville filed an answer. There is no information in the record indicating if the parties exchanged any discovery.

On July 29, 2024, Harleysville represented the policy in effect on the day of the accident only provided $100,000 in UIM coverage. However, plaintiff received the amended commercial vehicle policy reflecting $1,000,000 in UIM coverage in January 2024.

On December 5, 2024, Harleysville moved for summary judgment. It argued plaintiff was barred from recovering UIM benefits because he failed to provide Longworth notice before settling with the tortfeasor.

A-2962-24

On December 20, 2024, plaintiff's counsel filed a certification in opposition to Harleysville's motion. Counsel's certification conceded plaintiff possessed the $100,000 UIM coverage declaration pages issued by Harleysville "[a]t the time of the underlying settlement with [the tortfeasor and her insurance carrier]." However, the certification did not include any additional information explaining how or when plaintiff acquired the $100,000 UIM coverage declaration pages. Plaintiff's counsel stated he was unaware when or how he received the $100,000 UIM coverage declaration pages. Despite being unable to identify how or when plaintiff obtained the $100,000 UIM coverage declaration pages, plaintiff argued Harleysville misrepresented the amount of UIM coverage available to him.

A few days later, plaintiff submitted a brief in opposition to summary judgment. He argued: "(1) that Harleysville should be estopped from denying coverage due to alleged misrepresentations by Harleysville about the UIM policy limits[;] . . . (2) that Harleysville must show it suffered prejudice as a result of [plaintiff]'s failure to notify Harleysville of a UIM claim or settlement of the bodily injury claim[;]" and (3) that "Harleysville was on sufficient notice of a potential claim" from plaintiff's workers' compensation case.

A-2962-24

On January 3, 2025, in lieu of argument on the summary judgment motion, the judge held a pre-argument conference. At this conference, the judge requested supplemental briefing explaining when and how plaintiff received Harleysville's declaration pages reflecting $100,000 in UIM coverage.[5]

On January 13, 2025, plaintiff's counsel submitted a supplemental letter brief explaining he "was not able to positively identify when the original declaration[] page[s] w[ere] received from Harleysville." The letter from plaintiff's counsel stated:

> The straightforward answer to [the court's] questions is the same, we simply do not know. As candor to this [c]ourt is paramount, [plaintiff's counsel] will not embellish this response any further, nor will [he] make representations other than from [his] personal knowledge. The managing attorney of this firm's [p]re-[l]itigation [d]epartment is no longer employed by the firm. [Plaintiff's counsel's] own independent inquiry failed to disclose any concrete proof as to when the Harleysville policy was received and who it was received from.

This letter did not include any additional information in response to the judge's inquiry. Nor did plaintiff's counsel attach a certification attesting to the accuracy of the factual statements in his letter brief.

---

[5]  The record does not indicate whether the pre-argument conference was conducted in open court. There is no transcript of this conference.

A-2962-24

On February 4, 2025, the judge heard argument on the summary judgment motion. Plaintiff did not provide a transcript of the argument. However, Harleysville claims that during the motion argument plaintiff "conceded that he could not proffer any admissible evidence to establish that he was in possession of the [p]olicy or spoke to Harleysville about the coverage limits prior to executing the [settlement agreement with the tortfeasor]." During the motion argument, plaintiff asserts Harleysville "conceded that there was no evidence on the record to indicate that [p]laintiff's failure to provide Longworth [notice] was intentional."

At the conclusion of the argument, the motion judge requested further briefing. Specifically, the judge sought additional information as to "whether or not Harleysville was prejudiced as a result of [plaintiff]'s failure to provide Longworth notice." In a responsive brief, plaintiff argued Harleysville suffered no prejudice because (1) Harleysville would not have elected to subrogate considering the tortfeasor had no recoverable assets and (2) Harleysville was on notice of plaintiff's injuries from his workers' compensation case.

On March 4, 2025, the judge issued a decision on the motion. Prior to the judge's decision, Harleysville clarified it "did not admit to anything" regarding whether plaintiff intentionally failed to provide Longworth notice. Harleysville

merely "acknowledged that there's no evidence in the record of intentional conduct on behalf of the plaintiff."

After hearing the parties' arguments and considering the written submissions, the judge granted Harleysville's motion. The judge acknowledged plaintiff's counsel "represented that he d[id] not know how or when his firm obtained the declaration pages, indicating $100,000 in UIM coverage." The judge found "whatever investigation that [plaintiff] undertook, it remain[ed] the case that, from the plaintiff's standpoint, it [wa]s not known how or when the policy, as well as the declaration page[s] indicating $100,000 of UIM coverage w[ere] obtained."

The judge rejected plaintiff's assertion that "the [c]ourt must conduct an analysis as to whether Harleysville suffered any prejudice" resulting from plaintiff's allegedly negligent failure to provide Harleysville with Longworth notice. The judge distinguished plaintiff's circumstances from Breitenbach v. Motor Club of America Insurance Co., 295 N.J. Super. 328 (App. Div. 1996), and Rivers v. Allstate Insurance Co., 312 N.J. Super. 379 (App. Div. 1998). He concluded the plaintiffs in Breitenbach and Rivers provided Longworth notice to the insurance carriers, rendering those cases factually distinguishable from plaintiff's case.

In granting summary judgment, the judge relied on Ferrante. The judge found the Court's holding in Ferrante "dispel[led] plaintiff's contention that prejudice, or lack thereof, suffered by the UIM carrier must be considered when the failure to provide Longworth notice [wa]s due to negligent, rather than intentional, acts." The judge entered a March 4, 2025 order dismissing plaintiff's claims against Harleysville with prejudice.

On March 18, 2025, plaintiff moved for reconsideration. He argued the judge misinterpreted the Court's holding in Ferrante and incorrectly concluded "the unintentional failure to secure Longworth approval constitute[d] a per se bar to the recovery of UIM benefits in the absence of appreciable prejudice." Plaintiff noted the Ferrante Court declined to address the situation where an insured's failure to provide notice was the result of pure negligence rather than any misleading conduct. Plaintiff argued the Ferrante Court did not need to resolve whether there might be a rebuttable presumption of prejudice under circumstances suggesting negligence on the part of an insured, as opposed to intentionally misleading conduct, which would then shift the burden for the insured to show the absence of any prejudice from the failure to provide Longworth notice.

A-2962-24

On April 25, 2025, the judge heard argument on plaintiff's reconsideration motion. Plaintiff argued "the sole issue presented [wa]s whether or not the [UIM] carrier c[ould] deny . . . benefits where a plaintiff mistakenly and/or negligently failed to provide <u>Longworth</u> notice in the absence of appreciable prejudice." Plaintiff distinguished his circumstances from <u>Ferrante</u> because the plaintiff in <u>Ferrante</u> engaged in a deliberate effort to mislead the UIM carrier. Because Harleysville conceded that the record suggested plaintiff did not intentionally fail to provide <u>Longworth</u> notice, plaintiff asserted <u>Ferrante</u> did not control.

The judge denied the reconsideration motion. The judge rejected plaintiff's reliance on footnote two in <u>Ferrante</u>, explaining the footnote reinforced the broader holding that the court "d[id] not need to address the state of mind or weigh any potential prejudice to the carrier" when assessing an insured's failure to provide <u>Longworth</u> notice. The judge also acknowledged Harleysville's citation to unpublished cases decided after <u>Ferrante</u>, explaining those cases were not binding but they supported denial of the reconsideration motion. The judge entered an April 25, 2025 order denying reconsideration.

On May 23, 2025, plaintiff dismissed Zurich from the litigation and filed a notice of appeal. On June 2, 2025, plaintiff filed an amended notice of appeal.

A-2962-24

On appeal, plaintiff argues the judge erred in granting summary judgment because Ferrante does not bar UIM claims for an insured "who negligently rather than intentionally failed to provide timely Longworth notice" in the absence of any prejudice analysis. We agree that the judge was required to first determine whether plaintiff's failure to provide Longworth notice to Harleysville was negligent or intentional.

We review the trial court's grant of a motion for summary judgment de novo, applying the same standard as the trial court. Stewart v. N.J. Tpk. Auth./Garden State Parkway, 249 N.J. 642, 655 (2022). Rule 4:46-2(c) provides that a motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." We "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

A-2962-24

In <u>Longworth</u>, we held "an insured receiving an acceptable settlement offer from the tortfeasor should notify his UIM carrier." 223 N.J. Super. at 194. Notice of a settlement with the tortfeasor is required "if the insured is seeking UIM benefits because he or she 'receive[d] a settlement offer . . . that does not completely satisfy the claim, because the tortfeasor is underinsured.'" <u>Ferrante</u>, 232 N.J. at 471 (quoting <u>Rutgers Casualty Insurance Co. v. Vassas</u>, 139 N.J. 163, 174 (1995)). More than twenty years after <u>Longworth</u>, we clarified that "actual prejudice to subrogation rights [wa]s necessary to deny a claim for UIM benefits" if an insured failed to provide <u>Longworth</u> notice. <u>Tonic v. American Cas. Co.</u>, 413 N.J. Super. 458, 475 (App. Div. 2010).

Plaintiff does not dispute that he settled with the tortfeasor on September 18, 2023. He also does not dispute that he gave notice of this settlement to Harleysville on November 28, 2023. Therefore, plaintiff admittedly did not comply with the notice requirements under <u>Longworth</u> and Harleysville's policy.

Given plaintiff's admission that he failed to provide Harleysville with <u>Longworth</u> notice, the judge should have addressed whether the trial court needed to conduct a prejudice analysis regarding Harleysville's subrogation rights. The judge misstepped by stating <u>Ferrante</u> rejected a prejudice analysis when an insured's failure to provide <u>Longworth</u> notice is due to negligent acts.

Nothing in the Ferrante decision created a per se bar to proceeding with a UIM claim based on an insured's failure to provide Longworth notice. Rather, a decision to bar a UIM claim for an insured's failure to provide the required notice is fact-dependent. That analysis was not undertaken here.

Although Harleysville acknowledged the summary judgment record revealed "no evidence . . . of intentional conduct on behalf of the plaintiff," we are satisfied the summary judgment record is incomplete for the purpose of determining whether plaintiff's failure to provide Longworth notice was intentional or negligent. Further, depending on the answer, the judge may need to determine whether plaintiff must demonstrate Harleysville suffered no prejudice because of plaintiff's extinguishment of its subrogation rights.

Beyond the ambiguity in the record explaining how and when plaintiff obtained the declaration pages representing $100,000 in UIM coverage, plaintiff's reliance on that coverage limit may not have been reasonable. Here, the declaration pages listing $100,000 in UIM coverage did not identify plaintiff as an insured driver. Additionally, the premium paid by plaintiff's employer to obtain $1,000,000 in UIM coverage increased significantly, suggesting plaintiff's employer knew the extent of the UIM coverage available on the date of the accident. Moreover, whether Harleysville misrepresented the amount of

A-2962-24

the UIM coverage available on the accident date might impact whether plaintiff's failure to provide <u>Longworth</u> notice was negligent or intentional. Further, plaintiff's claim that Harleysville would not have pursued its right to subrogation against the tortfeasor is unsupported by the existing record.

Aside from these unresolved questions, the judge placed undue weight on <u>Ferrante</u> in granting summary judgment. In <u>Ferrante</u>, the Court acknowledged the plaintiff's argument that "if [the plaintiff] negligently, rather than intentionally, violated <u>Longworth</u>, the trial court should conduct a prejudice analysis." 232 N.J. at 474. However, because the plaintiff's actions in <u>Ferrante</u> were so egregious and purposeful and the plaintiff "could have, and should have" notified his insurance carrier of his UIM claim, the Court stated it "need not address [the plainitiff's] state of mind or weigh any potential prejudice to the carrier." <u>Ibid.</u>

As the <u>Ferrante</u> Court noted:

> [Defense counsel] suggests that if the insured's failure to provide notice was the result of pure negligence, and there was no misleading conduct, it may be appropriate to impose a rebuttable presumption of prejudice and place the burden on the insured to show the absence of prejudice. We need not resolve that issue in this case.
>
> [<u>Id.</u> at 474 n.2.]

Through this footnote, the Court in Ferrante recognized a distinction between an insured's intentional failure to provide Longworth notice and a negligent failure to provide such notice.

Here, the judge misapplied the Court's holding in Ferrante in granting summary judgment to Harleysville without determining whether plaintiff's failure to provide Longworth notice was intentional or negligent. Although plaintiff asserts his failure to provide Longworth notice was negligent, not intentional, nothing in the record to date supports a finding either way. At best, the existing record is incomplete. Plaintiff's conduct before filing his complaint for UIM benefits against Harleysville raises several questions and requires judicial fact findings to determine whether plaintiff's failure to provide the required notice was negligent or intentional. On remand, if the judge believes there should be discovery on this issue, the judge may consider scheduling a case management conference and establishing deadlines for any discovery necessary to resolve open questions.

Harleysville argues the judge's order is supported by the Court's holding in Vassas. Harleysville's reliance on Vassas is misplaced. Vassas was decided twenty-three years before Ferrante. In Vassas, the plaintiff failed to notify his carrier of his injuries 139 N.J. 166-67. In finding the plaintiff's claim barred,

the Court noted the plaintiff's repeated delays and failures to provide his carrier with Longworth notice but did not determine whether those delays and failures were negligent or intentional. Id. at 175-76. The Ferrante Court considered its holding in Vassas and explained: "Like in Vassas, where the insured initiated a lawsuit and received an arbitration award without informing the carrier, Ferrante did the same. [Ferrante] further violated his duty to inform [his carrier] by entering into a high-low agreement and taking the matter through a full jury trial without informing [his carrier]." Ferrante, 232 N.J. at 473.

Because Ferrante distinguished intentional and negligent failures to provide Longworth notice and determined Ferrante involved an intentional failure by the plaintiff, the Court held the Vassas standard applied to intentional failures to provide Longworth notice. See id. at 473-74. However, the Ferrante Court did not answer whether Vassas applied to negligent failures to provide Longworth notice. See id. at 474 n.2. Harleysville failed to cite any New Jersey cases applying Vassas to an insured's negligent failure to provide Longworth notice.

Further, Harleysville's citations to unpublished decisions in support of their argument are not binding on this court. None of the unpublished cases "constitute precedent or [are] binding upon any court." R. 1:36-3; accord

19

Rodriguez v. Shelbourne Spring, LLC, 259 N.J. 385, 393 n.2 (2024) ("[U]npublished opinions do not constitute precedent and are not binding.").

Because the judge did not resolve whether plaintiff's failure to provide Longworth notice to Harleysville prior to filing a UIM claim was negligent or intentional, the judge mistakenly granted summary judgment. Thus, we vacate the order for summary judgment, rendering the denial of plaintiff's motion for reconsideration moot. We remand for proceedings consistent with this opinion. We take no position on the outcome on remand.

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M. C. Hanley

Clerk of the Appellate Division

A-2962-24